## DORA PIPER v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY and Another.[1]

December 15, 1911.

Nos. 17,258—(83).

**Trespasser on railway property.**

> One who voluntarily goes on to that part of a railway company's property reserved for its exclusive use, without any license or implied permission so to do, is a trespasser.

**Injury to trespasser.**

> The accident here involved happened to a boy while walking between the main line double tracks of the defendant company. Under the facts as established by the evidence, he was a trespasser.

[1] Reported in 133 N. W. 984.

[Note] As to duty of railroad company to keep lookout for trespassers on track, see note in 8 L.R.A.(N.S.) 1069.

**No liability.**
> The defendants had no notice of his presence, did not wilfully or wantonly injure him, and are not liable for the injury received by him.

**Directed verdict.**
> The trial judge properly directed a verdict for the defendants.

Two actions in the district court for Hennepin county against defendant railway company and Ralph L. Munger, one by Dora Piper, individually, to recover $6,000 for medical services and loss of the services of her minor son, and the other by Dora Piper, as mother of James E. Piper, to recover $25,000 for the son's exclusive benefit. The answers admitted defendant's existence as a railway corporation of Wisconsin, operating a line of railway in the city of Wabasha, but denied the truth of any other allegation in the complaints. The cases were tried before Steele, J., who at the close of the testimony directed verdicts in favor of defendants. From an order denying plaintiff's motions for a new trial, she appealed. Affirmed.

*Larrabee & Davies,* for appellant.

*F. W. Root* and *Nelson J. Wilcox,* for respondents.

SIMPSON, J.

James E. Piper, fourteen years of age, had the lower part of his leg crushed by a train owned by the defendant railway company and being operated under the direction of the defendant Munger as conductor. The two actions brought by the mother, one to recover for expenses and loss of services, and the other to recover on behalf of her son for his injuries, were tried together. At the close of the evidence the trial court directed a verdict in favor of the defendants, on the grounds that the boy was a trespasser at the time he received the injury—the trainman not having seen him and having no reason to expect that any one would be walking between these tracks—and that the boy's negligence contributed to cause his injury. From an order denying the motion of the plaintiff for a new trial in each case, this appeal is taken.

The boy received his injury while walking west between the

double tracks of the main line of the defendant company about three-fourths of a mile east of Wabasha. A little east from the place of the accident a side or spur track extended from the southerly main track southwesterly into a gravel pit. On this spur track some boarding cars were standing, in which a crew of railway employees lived. The Piper boy was employed by a grocer, and had, on the day of the accident, delivered a sack of flour to this crew. Not receiving the pay for the flour when he delivered it, he returned to the cars between six and seven o'clock that evening, accompanied by a boy named Ross, eleven years of age, collected the money, and started back to his home in the village, walking between the two main tracks beside a moving gravel train which was running on the northerly track at the rate of seven or eight miles an hour in the same direction in which he was walking. At this time it was getting dark—so dark that small objects could only be seen within a short distance. While so walking, it is claimed by the plaintiff, he was struck on the shoulder by an iron arm or lever which projected out from the line of the cars a distance of approximately one and one-half feet. The boy testified that he was thrown down, and that he rolled or was drawn towards the car by the suction. One leg was run over, making necessary amputation of the leg below the knee.

Walnut street, a traveled highway, crossed the railway tracks about two hundred fifty feet west of the spur track. To reach the boarding cars from this street it was necessary to go on the railway property. On the east side of Walnut street and the southerly side of the railway tracks the wing fence inclosing the right of way did not extend to the tracks. Through the opening so left, and along the south side of the railway tracks, was a traveled way that was used by persons with teams and on foot in going to the boarding cars from Walnut street. There was no path between the double tracks, either east or west of Walnut street, and there was no evidence that any persons walked between those tracks at or near this place, either in going to or coming from these boarding cars, or for any other purpose. In the center of the space between the tracks, at intervals of fifty or one hundred feet, grade stakes projected from ten to sixteen inches above the surface of the ground.

In support of the ruling of the trial judge that the Piper boy was not impliedly permitted by the railway company to walk between the tracks, but was a trespasser, two claims are made by the defendants: First, that the evidence establishes that the accident occurred west of the Walnut street crossing, and it is conceded that if, when the accident happened, the boy was not coming from the boarding cars to the street, but was continuing to travel towards the village between the tracks after he had reached and crossed the street, he was then a trespasser.

Second, that the evidence establishes that east of the street a safe, convenient way was provided leading from the street to the boarding cars, and that there was no implied permission to use the space between the main tracks in going from the boarding cars to the street.

The Piper boy testified that when he was struck and run over by the gravel train he had not reached the Walnut street crossing. In answer to a question of how he knew this, he testified that after he was thrown down he saw the white crossing fence opposite him. When he was picked up and put on a train to be carried to the village, he was lying west of the crossing a distance variously estimated at from seventy-five to one hundred fifty feet. When the accident happened, the Ross boy ran to a nearby place for help. By the time he returned trainmen were picking the Piper boy up and putting him on the train. The Piper boy testified that after his companion left him to get help he waited awhile, and then crawled towards the village some distance, he did not know how far. That he crawled in his injured condition across the highway and seventy-five feet or more beyond in the very short interval between the time the Ross boy left him and the time the first of the trainmen reached him is very improbable.

The trainmen on the rear of the gravel train heard some one cry out. The rear brakeman testified that, believing some one had been hurt, he dropped off the train and saw the Piper boy lying near the track, about four car lengths away; that he immediately went to the boy, who was then lying about one hundred fifty feet west of the street crossing; that he then flagged a train closely

116 M.—16.

following the gravel train, and assisted in putting the boy on this second train. The conductor on the gravel train testified that, when his attention was called to the outcry, he looked back from the train and saw the two boys near the track, and located the place the boys then were as the place where the Piper boy was picked up. All the testimony and established circumstances, except the testimony of the Piper boy, tend very strongly to show that the accident happened west of the street crossing.

But whether the boy was east or west of Walnut street when he was injured is not important, in view of the fact that it clearly appears from the evidence that a way was provided for travel connecting Walnut street and the boarding cars. This way, while on the railroad's property, was at one side of and on a different level from the main tracks. It was not a graded or well-worn road; but it was an open space of sufficient width, leading directly from the street to the spur track, without any crossing of the railway tracks, and the evidence established the repeated use of this way for both team and foot travel between the boarding cars and the street. Its existence clearly negatived any implied permission to use the space devoted to the main line tracks for travel in going to or coming from the boarding cars.

The Piper boy, in returning from the boarding cars, after passing the spur track, followed this way south of the main line for a distance of two rail lengths, about a quarter of the entire distance between the spur track and the street. He then left this way, crossed the south track to the space between the double tracks, and started walking west in that space, alongside of an empty gravel train moving west on the north track. He testified that he had been warned to keep off the railroad tracks and away from moving trains. The condition of the space between the tracks did not suggest any invitation or license to use such space for travel. There was no traveled path there. In the midst of the space were projecting grade stakes. No use of such space as a walk is shown. It is true he testified it was rough and stony and a narrow place where he was walking south of the tracks, and that he went over between

the tracks because it was safer. The Ross boy also testified that the space south of the tracks was rough and narrow.

But if these statements are relied upon to raise an issue of fact as to the existence of a traveled way extending ten or twelve feet south of the south track, such statements are clearly insufficient, for they are in direct conflict, not only with the testimony of other witnesses in the case, but also directly at variance with the actual situation and condition, as clearly shown by photographs introduced in evidence by the plaintiff. These photographs clearly show the opening in the fence and the level way south of the tracks leading from Walnut street to the spur track and the boarding cars. While it is usually a difficult matter to determine when the testimony of an interested party is so at variance with all other evidence in the case that no question of fact is raised thereby for submission to a jury, it seems clear that when such testimony as to existing physical conditions lacks any substantial corroboration, and is in direct conflict, not only with the testimony of disinterested witnesses, but is directly and clearly contrary to existing conditions, as plainly shown by photographs conceded to be accurate, that no issue of fact is raised thereby. A verdict cannot rest on the denial of that which is conclusively proven and which in effect is conceded to exist.

The fact that the company permitted the use of these boarding cars on the spur track, and thereby permitted and licensed persons having business with the occupants of the cars to go on the railway property in reaching the cars, did not amount to a permission to use the tracks of the company for such purpose, if a suitable way to reach the cars was provided outside the space occupied by the tracks.

Nor can any inference arise in this case that the Piper boy was led to walk between the tracks by any appearance of a permission so to do under the existing facts already stated. When he came from his home to the boarding cars, he did not follow the streets, but went down to the railway tracks and walked the entire distance along them. The inference cannot be avoided that in leaving the space at the south of the tracks and going between the tracks on his return journey he went, not in response to any supposed invitation

or permission so to do, but through a tendency, too common among men as well as boys, to walk along railway tracks simply as a matter of supposed convenience.

The Piper boy, being voluntarily on a part of the railway company's property, clearly reserved for its exclusive use, without any license or implied permission to be there, was, at the time of the accident, in law, a trespasser; and it not appearing, and no claim being made, that the defendants, or either of them, had any notice of his presence, or wantonly or wilfully caused his injury, the defendants are not liable for the injury received by him.

The trial judge properly directed a verdict for the defendants. Affirmed.